OPINION
{¶ 1} Plaintiff-appellant, Mary J. Hatton, appeals from a judgment of the Franklin County Court of Common Pleas that granted summary judgment in favor of defendants-appellees, Interim Health Care of Columbus, Inc. ("Interim"), Bonnie Ferebee, and Leisa Petrozino. For the following reasons, we affirm.
 {¶ 2} Hatton is a registered nurse licensed by the state of Ohio. On January 4, 2002, Interim hired Hatton to work as a health care manager. Hatton's job required her to *Page 2 
provide home health care to patients and, in doing so, to make treatment decisions based upon her education and experience in nursing.
 {¶ 3} In early February 2003, Hatton's supervisor, Ferebee, placed Hatton on probation. On February 25, 2003, Hatton administered Soma, a muscle relaxant, to one of her assigned patients. Hatton had not previously given Soma to her patient, and she only decided to do so after reviewing the patient's medical chart and the pharmaceutical disclaimer for Soma. Upon her return to Interim's office, Hatton discussed with Ferebee her decision to administer Soma to the patient. After that discussion, Ferebee completed an "Employee Conference Report," in which she stated:
 Mary acknowledged that she gave Soma to a client [without] knowing what it was, what the side effects or desired effects were. Nor did she look up the med to see what she needed to know. When asked about this[,] her response was ["]I was a pediatric nurse for all these years.["] Mary has been an adult case manager for the past yr. It doesn't matter what client population you work [with][,] the nursing process is the same. YOU LOOK UP MEDS UNKNOWN TO YOU [BEFORE] YOU GIVE THEM TO CLIENTS.
 {¶ 4} Three days later, Ferebee terminated Hatton's employment for violating Interim's rules and procedures as well as standard nursing practice care. Ferebee and Petrozino, another Interim employee, signed the "Employee Termination Record," which listed "poor nursing practice" as a reason for firing Hatton.
 {¶ 5} On March 10, 2003, Hatton filed an application for the determination of benefit rights with the Ohio Department of Job and Family Services ("ODJFS"). Initially, the Director of ODJFS allowed Hatton's claim for unemployment benefits. Interim appealed that decision to the Unemployment Compensation Review Commission *Page 3 
("UCRC"), where a hearing officer determined that Interim had just cause to discharge Hatton and, thus, disallowed further benefits.
 {¶ 6} On June 20, 2005, Hatton filed suit asserting claims for: (1) wrongful discharge in violation of public policy against Interim, (2) defamation against Ferebee and Petrozino, (3) tortious interference with employment against Ferebee, and (4) intentional infliction of emotional distress against Interim, Ferebee, and Petrozino. After answering, appellees moved for summary judgment. In response to appellees' motion for summary judgment, Hatton filed a Civ.R. 56(F) motion, asking the trial court for additional time in which to conduct the depositions of Ferebee, Petrozino, and others. The trial court granted this motion and gave Hatton until March 31, 2006 to file her memorandum contra. On April 3, 2006, Hatton sought a second extension under Civ.R. 56(F) so that she could conduct depositions. The trial court granted Hatton's motion and ordered Hatton to file her memorandum contra by April 19, 2006. On April 20, 2006, Hatton filed her third Civ.R. 56(F) motion. Hatton explained that she had deposed all of the relevant witnesses except for Ferebee, and she asked the trial court to postpone the filing date for her memorandum contra until May 3, 2006 so that she could depose Ferebee. Hatton, however, filed her memorandum contra a day after filing her third Civ.R. 56(F) motion, thus making a ruling upon the motion unnecessary. On May 3, 2006, Hatton filed her fourth and final Civ.R. 56(F) motion. In this last Civ.R. 56(F) motion, Hatton asked the trial court to defer ruling upon appellees' motion for summary judgment until she had completed the deposition of Ferebee.
 {¶ 7} The trial court never ruled upon Hatton's last Civ.R. 56(F) motion. Instead, the trial court issued a decision granting summary judgment to appellees on all of *Page 4 
Hatton's claims. The trial court reduced its decision to judgment on August 11, 2006, and Hatton now appeals from that judgment.
 {¶ 8} On appeal, Hatton assigns the following errors:
 1. The Trial Court erred as a matter of law in its interpretation of the collateral estoppel doctrine as applied to the Unemployment Compensation Review Commission's finding of just cause.
 2. The Trial Court erred as a matter of law in its interpretation of qualified privilege as applied to Appellant's cause in defamation.
 3. The Trial Court erred as a matter of law in its interpretation that an at-will employee is not entitled to pursue a wrongful discharge case.
 4. The Trial Court erred and abused its discretion because its decision was based on the incorrect basis that the Appellant did not appeal the Unemployment Compensation Review Commission's decision when, in fact, she did appeal to Knox County Court of Common Pleas who affirmed said decision.
 5. The Trial Court erred by not finding that the Appellant's pre-existing mental condition in remission was intentionally aggravated by the acts or conduct of the individual Appellees' acts or conduct directed towards the Appellant to inflict mental distress.
 6. The Trial Court erred in not granting Appellant's Motion to Strike the Hearing Officer's Decision and Affidavit.
 7. The Trial Court erred in granting Appellee's Motion for Summary Judgment and not extending further discovery under O.Civ.R. 56(F).
 8. The Trial Court erred in not considering that acts or conduct by the individual Defendants outside of their scope of authority can be considered intentional interference with Appellant's employment. *Page 5 
 {¶ 9} We will address Hatton's assignments of error out of order, beginning with her seventh assignment of error. By that assignment of error, Hatton argues that the trial court should have granted her fourth Civ.R. 56(F) motion. We disagree.
 {¶ 10} Pursuant to Civ.R. 56(F):
 Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.
Relying upon Civ.R. 56(F), a party may seek additional time in which to develop the facts necessary to adequately oppose a motion for summary judgment. Carolina Tobacco Co. v. Petro, Franklin App. No. 04AP-1125,2006-Ohio-1205, at ¶ 37. The party requesting a Civ.R. 56(F) continuance bears the burden of establishing "sufficient reasons" why it needs additional time. Culbreath v. Golding Enterprises, LLC, Franklin App. No. 05AP-1230, 2006-Ohio-2606, at ¶ 13; Carolina Tobacco Co., at ¶ 39. Whether the movant has met its burden is a determination within the trial court's discretion, and a reviewing court will not reverse the denial of a Civ.R. 56(F) motion absent an abuse of that discretion.Culbreath, at ¶ 14; Carolina Tobacco Co., at ¶ 39; Whiteside v.Conroy, Franklin App. No. 05AP-123, 2005-Ohio-5098, at ¶ 37.
 {¶ 11} In Hatton's fourth Civ.R. 56(F) motion, she asked for the trial court to defer ruling upon appellees' motion for summary judgment until she completed Ferebee's deposition. Hatton subsequently represented to the trial court that she deposed Ferebee on May 30, 2006 — over one month before the trial court issued its decision granting appellees' motion for summary judgment. Consequently, although the trial court never *Page 6 
explicitly ruled upon Hatton's fourth Civ.R. 56(F) motion, the trial court's delay in deciding the motion for summary judgment allowed Hatton the continuance she sought. As the trial court's de facto ruling on the fourth Civ.R. 56(F) motion favored Hatton, the "error" she complains of is nonexistent. Accordingly, we overrule Hatton's seventh assignment of error.
 {¶ 12} The remainder of Hatton's assignments of error (with the exception of the sixth) all assert that the trial court erred in granting summary judgment to appellees. Appellate review of summary judgment motions is de novo. Helton v. Scioto Cty. Bd. Of Commrs.
(1997), 123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court."Mergenthal v. Star Banc Corp. (1997), 122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp. Relations Bd. (1997),78 Ohio St.3d 181, 183.
 {¶ 13} By Hatton's second assignment of error, she argues that the defense of qualified immunity does not relieve Ferebee and Petrozino of liability for their defamatory statements. We disagree.
 {¶ 14} In arguing their motion for summary judgment, Ferebee and Petrozino did not dispute Hatton's ability to establish the elements of her defamation claim. Rather, they invoked the defense of qualified privilege. "Generally, a communication made in *Page 7 
good faith on a matter of common interest between an employer and an employee, or between two employees concerning a third employee, is protected by qualified privilege." Hartley v. Riverside MethodistHosp. (1991), 78 Ohio App.3d 73, 81. See, also, Galyean v.Greenwell, Washington App. No. 05CA11, 2007-Ohio-615, at ¶ 68-69;Kanjuka v. MetroHealth Med. Cent, 151 Ohio App.3d 183, 2002-Ohio-6803, at ¶ 42; Blatnik v. Avery Dennison Corp., 148 Ohio App.3d 494,2002-Ohio-1682, at ¶ 57. This rule of law arises from Evely v. CarlonCo. (1983), 4 Ohio St.3d 163, 165-166, in which the Supreme Court of Ohio afforded a qualified privilege to allegedly defamatory statements that corporate officers made to other officers and supervisory personnel about an employee's on-the-job activities.
 {¶ 15} Once the defense of qualified privilege attaches, a plaintiff can only defeat the privilege with clear and convincing evidence that the defendant made the statements at issue with actual malice. A B-Abell Elevator Co., Inc. v. Columbus/Cent. Ohio Bldg. Constr. TradesCouncil (1995), 72 Ohio St.3d 1, 11, citing Jacobs v. Frank (1991),60 Ohio St.3d 111, paragraph two of the syllabus. A defendant acts with "actual malice" if she makes statements with the knowledge that her statements are false or if she recklessly disregards the truth or falsity of her statements. Id. at 11-12.
 {¶ 16} Here, Hatton claims that Ferebee and Petrozino defamed her in two documents: the "Employee Conference Report" and the "Employee Termination Record." Both documents were created in the scope of their author's employment, and both were distributed only to those managerial employees who had a need to know the information contained within. Further, the two documents contained evaluations of Hatton's employment — a matter of common interest between Interim, Ferebee, and Petrozino. *Page 8 
Therefore, Ferebee and Petrozino possessed a qualified privilege to make the statements contained in the two documents.
 {¶ 17} Hatton, however, argues that we should revoke that qualified privilege because Ferebee and Petrozino acted with actual malice. Hatton asserts that she is an experienced nurse, and that, as a nurse, she has the discretion to make decisions concerning the care and treatment of patients. Although both points of evidence are undisputed, neither establishes that Ferebee and Petrozino knew that their statements were false nor that they were aware of a high probability of the statements' falsity. In essence, Ferebee and Petrozino both stated that Hatton engaged in a poor nursing practice when she administered a medication without knowing everything she needed to know about the medication. Hatton presents no evidence that Ferebee and Petrozino knowingly mischaracterized her actions or their honest judgment of those actions when they authored the disputed statements. As Hatton failed to present any evidence suggesting that Ferebee and Petrozino acted with actual malice, we conclude that they are entitled to a qualified privilege. Accordingly, we overrule Hatton's second assignment of error.
 {¶ 18} By her third assignment of error, Hatton argues that the trial court erred in granting appellees summary judgment on her claim for wrongful discharge in violation of public policy. We disagree.
 {¶ 19} To assert a viable claim for wrongful discharge in violation of public policy, a plaintiff must establish each of the following four elements:
 "1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element). *Page 9 
 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
 4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element). (Emphasis sic)."
Kulch v. Structural Fibers, Inc. (1997), 78 Ohio St.3d 134, 151, quoting H. Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398-399. Of these four elements, the first two (the clarity and jeopardy elements) are questions of law to be decided by the court. Collins v. Rizkana (1995),73 Ohio St.3d 65, 70. The last two (the causation and overriding justification elements) are question of fact to be decided by a jury. Id.
 {¶ 20} In establishing that a clear public policy exists, a plaintiff may rely upon both state and federal law, including the Ohio and federal Constitutions, statutes, administrative regulations, and common law.Kulch, at 152. Here, Hatton fails to identify any public policy, much less a clear public policy. Accordingly, we find the trial court properly granted summary judgment on her claim for wrongful discharge in violation of public policy and, thus, we overrule her third assignment of error.
 {¶ 21} By her fifth assignment of error, Hatton argues that she presented sufficient evidence to preclude summary judgment on her claim for intentional infliction of emotional distress. We disagree.
 {¶ 22} A person is liable for intentional infliction of emotional distress if she "by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another." Yeager v. Loc.Union 20, Teamsters, Chauffeurs, Warehousemen *Page 10 Helpers of Am. (1983), 6 Ohio St.3d 369, syllabus. A defendant's conduct does not lead to liability unless it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and [must] be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 375. See, also, Strausbaugh v. Ohio Dept.of Transp., 150 Ohio App.3d 438, 2002-Ohio-6627, at ¶ 15 ("[T]he mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough."). Because the work environment "is one in which employees must expect to be evaluated, [and] not always favorably[,] * * * questioning, criticism, and discharge of an employee do not constitute outrageous conduct."Katterhenrich v. Fed. Hocking Loc. School Dist. Bd. of Edn. (1997),121 Ohio App.3d 579, 590, citing Prosser Keeton, The Law of Torts (5 Ed.1984) 62, Section 12.
 {¶ 23} In the case at bar, the conduct Hatton complains of consists entirely of her employer's reprimands and the subsequent termination of her employment. Such conduct falls short of the extreme or outrageous conduct necessary to support a claim for intentional infliction of emotional distress. Accordingly, we find that the trial court properly granted appellees' summary judgment on that claim and, thus, we overrule Hatton's fifth assignment of error.
 {¶ 24} By her eighth assignment of error, Hatton argues that she presented sufficient evidence to preclude summary judgment on her claim for tortious interference with employment. We disagree.
 {¶ 25} Only "outsiders" who maliciously interfere with another's employment are liable for tortious interference with employment.Anderson v. Minter (1972), 32 Ohio St.2d 207, 213. Consequently, liability for tortious interference does not extend to a supervisor *Page 11 
who terminates or otherwise impairs the plaintiff's employment while in the course of her own duties. Id. at 213-214. See, also, Smiddy v.Kinko's, Inc., Hamilton App. No. C-020222, 2003-Ohio-446, at ¶ 9 ("A person in a supervisory capacity or other position of authority over the employee cannot be sued for interfering with the employment relationship that it is his duty to monitor, supervise, or enforce."); Contadino v.Tilow (1990), 68 Ohio App.3d 463, 467 ("There are those whose position vis-à-vis the employee and the employer entitles them to intrude upon the employment relationship."). Even if a supervisor interferes maliciously, liability does not arise. Anderson, at 213 ("Nor can liability be predicated simply upon the characterization of such conduct as malicious. * * * `Malice makes a bad case worse, but does not make wrong that which is lawful.' "). See, also, Courie v. ALCOA,162 Ohio App.3d 133, 2005-Ohio-3483, at ¶ 37 (a supervisor's "self-centered" motive for reprimanding the plaintiff did not give rise to a claim for tortious interference with employment).
 {¶ 26} We recognize that in Mitchell v. Mid-Ohio Emergency Services,L.L.C., Franklin App. No. 03AP-981, 2004-Ohio-5264, we characterized tortious interference with employment differently. There, we stated that a qualified privilege could protect a supervisor who interfered with a plaintiff's employment, but only if the supervisor did not act with actual malice. Id. at ¶ 30-31. Because the defendants inMitchell were not the plaintiff's supervisors, our discussion of qualified privilege did not impact the outcome of the case and, thus, constituted mere dicta. This dicta is not controlling, especially since it contradicts the holding in Anderson that malice does not render a supervisor's conduct actionable. *Page 12 
 {¶ 27} In the case at bar, Hatton asserts that Ferebee tortiously interfered with her employment when Ferebee wrote "poor nursing practice" on the "Employee Termination Record." As Ferebee was acting within the scope of her employment as Hatton's supervisor when she completed the "Employee Termination Record," her actions cannot form the basis of a claim for tortious interference with employment. Accordingly, we find that the trial court properly granted Ferebee summary judgment on that claim, and we overrule Hatton's eighth assignment of error.
 {¶ 28} By her first assignment of error, Hatton argues that the UCRC's finding that Interim had just cause to discharge her does not collaterally estop her from asserting her claims. We agree.
 {¶ 29} Pursuant to R.C. 4141.281(D)(8):
 No finding of fact or law, decision, or order of the director, hearing officer, the commission, or a reviewing court under this section * * * of the Revised Code shall be given collateral estoppel or res judicata effect in any separate or subsequent judicial, administrative, or arbitration proceeding, other than a proceeding arising under this chapter.
Thus, a "just cause" determination made for purposes of deciding eligibility for unemployment compensation benefits cannot have a collateral estoppel effect on a subsequent civil suit concerning the employee's discharge. Sexton v. Oak Ridge Treatment Cent. AcquisitionCorp., 167 Ohio App.3d 593, 2006-Ohio-3852, at ¶ 11. Cf. State ex rel.Miller v. Lincoln Constr, Inc., Franklin App. No. 04AP-197,2005-Ohio-2962, at ¶ 20 (finding that R.C. 4141.281[D][8] prohibited the Industrial Commission from giving a res judicata effect to the UCRC's decision that the relator's employer discharged him without just cause). *Page 13 
 {¶ 30} In the case at bar, the trial court found that each of Hatton's claims failed because the collateral estoppel doctrine prevented Hatton from re-litigating whether Interim had just cause to discharge her. Because R.C. 4141.281(D)(8) bars courts from giving the UCRC's "just cause" determination a preclusive effect, we conclude that the trial court erred in holding that the collateral estoppel doctrine barred Hatton's claims.
 {¶ 31} Despite our conclusion, we must overrule Hatton's first assignment of error. Based upon our resolution of Hatton's second, third, fifth, and eighth assignments of error, we find that the trial court had valid alternative reasons for granting summary judgment in appellees' favor. Accordingly, the trial court's application of the collateral estoppel doctrine amounts to harmless error. See Brothers v.Morrone-O'Keefe Dev. Co., Franklin App. No. 05AP-161, 2006-Ohio-1160, at ¶ 26 ("When avoidance of the error would not have changed the outcome of the proceedings, then the error neither materially prejudices the complaining party nor affects a substantial right of the complaining party.").
 {¶ 32} By her fourth assignment of error, Hatton argues that the trial court erred in finding that she did not appeal the UCRC's "just cause" determination. By her sixth assignment of error, Hatton argues that the trial court erred in denying her motion to strike the UCRC's decision from the record. Both of these assignments assert error that is ancillary to the trial court's decision to give the UCRC's "just cause" determination collateral estoppel effect. As that decision is not reversible error, Hatton's fourth and sixth assignments of error are moot.
 {¶ 33} For the foregoing reasons, we overrule Hatton's first, second, third, fifth, seventh, and eighth assignments of error and we overrule Hatton's fourth and sixth *Page 14 
assignments of error as moot. Therefore, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 BRYANT and PETREE, JJ., concur. *Page 1