[Cite as *Pratt v. Univ. of Cincinnati* , 2018-Ohio-2162.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Awadagin Pratt, | : | |
| | | No. 17AP-729 |
| Plaintiff-Appellant, | : | and |
| | | No. 17AP-739 |
| v. | : | (Ct. of Cl. No. 2016-00184) |
| | | |
| University of Cincinnati, | : | (ACCELERATED CALENDAR) |
| | | |
| Defendant-Appellee. | : | |

---

D E C I S I O N

Rendered on June 5, 2018

---

**On brief:** *Mezibov Butler*, and *Marc D. Mezibov*, for appellant. **Argued:** *Marc D. Mezibov.*

**On brief:** *Michael DeWine,* Attorney General, and *Velda K. Hofacker*, for appellee. **Argued:** *Velda K. Hofacker.*

---

APPEALS from the Court of Claims of Ohio

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, Awadagin Pratt, appeals from a judgment entry of the Court of Claims of Ohio granting the motion for summary judgment of defendant-appellee, University of Cincinnati ("the university"). Pratt additionally appeals from a separate judgment entry of the trial court denying Pratt's Civ.R. 60(B) motion for relief from judgment. For the following reasons, we affirm.

I. Facts and Procedural History

{¶ 2} In 2014, Pratt was the chair of the piano department at the university's College – Conservatory of Music ("CCM"). The piano department was searching for two new faculty members to replace two retiring faculty members. The retiring faculty members were a married couple. Michael Chertock, chair of the keyboard division and

Pratt's direct supervisor, was in charge of the faculty search committee responsible for reviewing applications and discussing which candidates should be invited to campus. The search committee consisted of Chertock, Pratt, James Tocco, Sandra Rivers, and Jonathan Kregor. Another faculty member of the piano department, Soyeon Kate Lee, had recused herself from the search committee because her husband, Ran Dank, was applying for the open position.

{¶ 3} One of the candidates who applied for the open position, Ning An, was a then-enrolled student of Pratt's at the university. Peter Landgren, the former dean of the university's CCM, did not know An was a student of Pratt's at the time An applied for the position. Both Lee's husband and Pratt's student were selected as finalists for the position and were invited to the university for interviews in February 2015.

{¶ 4} During the search for candidates, Pratt expressed his opposition to having another married couple on the faculty because of his concern that a married couple could create a voting bloc. In the midst of the performances of the finalists, Pratt reported to Landgren his opinion that Lee's interaction with one of the finalists was inappropriate due to her presumed preference for her husband's candidacy. In response, Lee informed Landgren she felt she was being singled out unfairly for having a bias in favor of her husband while Pratt was advocating for a current student.

{¶ 5} Upon learning An was a current student of Pratt's, Landgren became concerned about the fairness of the faculty search and Pratt's role on the search committee. Landgren consulted the Office of Equal Opportunity and Access ("OEO"), which advised him it would be a conflict of interest for Pratt to serve on the search committee. Additionally, Landgren consulted the Provost's office which also advised that the situation created a conflict of interest. Both because of these outside opinions and because of his own concerns, Landgren decided to declare the search failed.

{¶ 6} Once Landgren deemed the search failed, Lee emailed the other piano department faculty that if her husband were to again apply for an open position on the faculty, she would not participate in the search. In an email, Lee asked that Pratt also recuse himself from the search should his current student also reapply. Faculty members were copying Landgren on various emails related to these disagreements. On March 10, 2015, Chertock responded to one of these emails asking the faculty to give Landgren "some peace"

on the issue of the faculty search.  (Ex. A, Chertock Aff., attached to Aug. 7, 2017 Def.'s Mot. for Summ. Jgmt.)

{¶ 7}  In response to Chertock's email, Landgren then composed an email the same day to all the faculty members copied on the prior email stating, in pertinent part:

> In speaking with OEO and the Provost's Office, there is no need to discuss "presumed preferences."  There is nothing *presumed* when a current student of a member of a search committee is in the finals with their teacher on the search committee.  This is a conflict of interest, plain and simple.  Any individual given such a conflict should not have been on the search committee, or at the very least, they should have recused themselves in the voting for this candidate.  You, [Pratt], chose not to do so, and your asking me today why that was not part of the training is defensive to what I suspect you knew you should have done all along.

(Emphasis sic.)  (Ex. A, Landgren Aff., attached to Def.'s Mot. for Summ. Jgmt.)

{¶ 8}  On March 9, 2016, Pratt filed a complaint alleging false light invasion of privacy and defamation against the university.  Pratt additionally sought an immunity determination relative to the actions of Landgren.  The allegations contained in the complaint stem from Landgren's March 10, 2015 email to Pratt and other faculty members of the piano department regarding Pratt's actions during the search for a new piano department faculty member.  The university filed an answer denying any liability.

{¶ 9}  On August 7, 2017, the university filed a motion for summary judgment on Pratt's claims for defamation and false light invasion of privacy, as well as on the issue of Landgren's immunity.  Pratt filed a memorandum in opposition to the university's motion for summary judgment on August 25, 2017 in which he abandoned his false light invasion of privacy claim but argued there remained genuine issues of material fact on his claim for defamation.  The university filed a reply on September 1, 2017.

{¶ 10} In a September 8, 2017 decision, the trial court granted the university's motion for summary judgment.  In so ruling, the trial court noted that while Pratt had cited to deposition testimony of various witnesses, Pratt failed to file those deposition transcripts with the trial court.  Despite Pratt's failure to file the deposition transcripts, the trial court found that "the facts are largely undisputed and/or any dispute is immaterial and overwhelmingly merit summary judgment in [the university's] favor."  (Sept. 8, 2017

Decision at 2.) In concluding the university was entitled to summary judgment on the defamation claim, the trial court determined (1) the contents of the email are true; (2) the email expressed Landgren's own expectations, beliefs, and opinions; and (3) qualified privilege protects Landgren's email. The trial court further determined Landgren was entitled to immunity pursuant to R.C. 2743.02(F). That same day, the trial court issued a judgment entry rendering judgment in favor of the university.

{¶ 11} Subsequently, on September 26, 2017, Pratt filed a motion for relief from judgment. In his motion, Pratt stated he "does not seek to set aside the court's ruling on summary judgment in favor of" the university, but instead sought "relief from the final judgment for the limited purpose for permitting [Pratt] to file the deposition transcripts *nunc pro tunc* so that the record will contain all of the evidence adduced in support of his opposition to the motion for summary judgment should this matter proceed to an appellate level." (Mot. for Relief from Jgmt. at 2.) On October 6, 2017, the trial court issued an entry denying Pratt's motion for relief from judgment.

{¶ 12} Pratt filed two separate notices of appeal: one appealing from the trial court's granting of the university's motion for summary judgment, and one appealing from the trial court's denial of Pratt's motion for relief from judgment. We sua sponte consolidated Pratt's appeals.

## II. Assignments of Error

{¶ 13} Pratt assigns the following errors for our review:

> [1.] The trial court erred and abused its discretion in denying Appellant's motion for relief from judgment pursuant to Civ.R. 60(B).

> [2.] The trial court erred as a matter of law in granting summary judgment in favor of [the university].

For ease of discussion, we address Pratt's assignments of error out of order.

## III. Second Assignment of Error – Motion for Summary Judgment

{¶ 14} In his second assignment of error, Pratt argues the trial court erred in granting summary judgment to the university on his defamation claim. Pratt does not appeal the trial court's immunity determination regarding Landgren.

{¶ 15} An appellate court reviews summary judgment under a de novo standard. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995); *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994). Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 16} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997). Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

{¶ 17} To succeed on a claim of defamation, a plaintiff must demonstrate " '(1) that a false statement was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the required degree of fault in publishing the statement.' " *Rarden v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 12AP-225, 2012-Ohio-5667, ¶ 27, quoting *Pollock v. Rashid*, 117 Ohio App.3d 361, 368 (1st Dist.1996).

{¶ 18} One of the reasons the trial court set forth that Pratt's defamation claim must fail is that Landgren's email was protected by qualified privilege. As both this court and the Supreme Court of Ohio have recognized, qualified privilege is a defense to a defamation claim. *DeGarmo v. Worthington City Schools Bd. of Edn.*, 10th Dist. No. 12AP-961, 2013-

Ohio-2518, ¶ 18, citing *Hahn v. Kotten*, 43 Ohio St.2d 237, 243 (1975). In the context of employer-employee communication, " 'a communication made in good faith on a matter of common interest between an employer and an employee, or between two employees concerning a third employee, is protected by qualified privilege.' " *Crase v. Shasta Beverages, Inc.*, 10th Dist. No. 11AP-519, 2012-Ohio-326, ¶ 47, quoting *Hatton v. Interim Health Care of Columbus, Inc.*, 10th Dist. No. 06AP-828, 2007-Ohio-1418, ¶ 14. This rule emanates from a Supreme Court of Ohio case affording "a qualified privilege to allegedly defamatory statements that corporate officers made to other officers and supervisory personnel about an employee's on-the-job activities." *Crase* at ¶ 47, citing *Evely v. Carlon Co.*, 4 Ohio St.3d 163, 165-66 (1983).

{¶ 19} Further, "[o]nce the defense of qualified privilege attaches, a plaintiff can only defeat the privilege with clear and convincing evidence that the defendant made the statements at issue with actual malice." *Crase* at ¶ 48, citing *A & B-Abell Elevator Co., Inc. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 11 (1995). A defendant acts with "actual malice" when he or she makes statements with the knowledge that those statements are false or if he or she recklessly disregards the truth or falsity of those statements. *Crase* at ¶ 48, citing *Hatton* at ¶ 15, citing *A & B-Abell Elevator Co., Inc.* at 11-12.

{¶ 20} As the trial court noted in its decision, there is no dispute that Landgren's March 10, 2015 email related to an ongoing dispute among the piano department faculty and the email addressed only work-related subjects of which the recipients were already aware and were already discussing. The conduct of the search committee and faculty members are matters of common interest to the faculty members to whom Landgren sent the email. Thus, we agree with the trial court's conclusion that Landgren's email to other faculty members regarding a subject already under discussion and pertaining to matters of common interest and ongoing business among those faculty members is entitled to a qualified privilege. *See Crase* at ¶ 50 (holding statements fell under a qualified privilege because "the challenged communications were made between employees having a common interest with regard to appellant's work performance"); *Evely* at 165 (statements "made concerning the activities of the appellant arising out of his employment status with the

company" and not "directed to the appellant as an individual separate and apart from his employment" are afforded a qualified privilege).

{¶ 21} Once the university asserted the defense of qualified privilege in its motion for summary judgment, the burden fell to Pratt to show there remained a genuine issue of material fact of whether the university acted with actual malice. *Crase* at ¶ 48. However, beyond arguing qualified privilege should not attach in this case, Pratt does not point to any evidence of actual malice. There is no evidence that Landgren knowingly mischaracterized Pratt's actions or his honest judgment of those actions when he discussed the conflict among the piano department faculty members. For these reasons, we agree with the trial court that the undisputed facts compel the conclusion that Landgren's email is protected by the qualified privilege applicable to employer-employee communications. Thus, because the trial court did not err in granting the university's motion for summary judgment on Pratt's defamation claim, we overrule Pratt's second assignment of error.

## IV.  First Assignment of Error – Motion for Relief from Judgment

{¶ 22} In his first assignment of error, Pratt argues the trial court erred in denying his motion for relief from judgment.

{¶ 23} To prevail on a Civ.R. 60(B) motion for relief from judgment, the movant must satisfy a three-prong test. The movant must demonstrate (1) it has a meritorious defense or claim to present if relief is granted; (2) it is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time and, when relying on a ground for relief set forth in Civ.R. 60(B)(1), (2), or (3), it filed the motion not more than one year after the judgment, order, or proceeding was entered or taken. *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146 (1976), paragraph two of the syllabus. There will be no relief if the movant fails to satisfy any one of the prongs of the *GTE* test. *Strack v. Pelton*, 70 Ohio St.3d 172, 174 (1994).

{¶ 24} An appellate court reviews a trial court's denial of a Civ.R. 60(B) motion for an abuse of discretion. *Harris v. Anderson*, 109 Ohio St.3d 101, 2006-Ohio-1934, ¶ 7; *Oberkonz v. Gosha*, 10th Dist. No. 02AP-237, 2002-Ohio-5572, ¶ 12. An abuse of discretion is more than merely an error of judgment; it connotes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 25} As the trial court noted, although Pratt captioned his motion as a "motion for relief from judgment" pursuant to Civ.R. 60(B), Pratt specifically stated that he "does not seek to set aside the court's ruling on summary judgment."  (Mot. for Relief from Jgmt. at 2.)  Instead, the sole relief Pratt sought was the ability to supplement the record with the deposition transcripts he cited in his response to the university's motion for summary judgment but that he failed to timely file with the trial court.  There is nothing in the plain language of Civ.R. 60(B) that affords such relief.

{¶ 26} Moreover, as the trial court noted, Pratt's stated basis for the requested relief is to enable this court, on appeal, to review all the pertinent facts when considering the university's motion for summary judgment.  However, "[a]ppellate review is limited to the record as it existed at the time the trial court rendered judgment." *Fifth Third Mtge. Co. v. Salahuddin*, 10th Dist. No. 13AP-945, 2014-Ohio-3304, ¶ 13.  Thus, "a reviewing court cannot consider evidence that a party added to the trial court record after that court's judgment and then decide an appeal from the judgment based on new evidence." *Id.*, citing *Paasewe v. Wendy Thomas 5 Ltd.*, 10th Dist. No. 09AP-510, 2009-Ohio-6852, ¶ 15.

{¶ 27} Thus, the trial court did not abuse its discretion in denying Pratt's Civ.R. 60(B) motion for the stated purpose of creating a different record for the court of appeals than what was before the trial court.  Accordingly, we overrule Pratt's first assignment of error.

## V.  Disposition

{¶ 28} Based on the foregoing reasons, the trial court did not err in granting the university's motion for summary judgment and did not abuse its discretion in denying Pratt's Civ.R. 60(B) motion for relief from judgment.  Having overruled Pratt's two assignments of error, we affirm the judgments of the Court of Claims of Ohio.

*Judgments affirmed.*

BROWN, P.J., and SADLER, J., concur.

———————————