[Cite as *Johnson v. Fifth Third Bancorp*, 2026-Ohio-1831.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Darren Johnson, | : | |
| Plaintiff-Appellant, | : | No. 25AP-924 |
| | | (C.P.C. No. 25CV-3330) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Fifth Third Bancorp et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on May 19, 2026

**On brief:** *Joy L. Marshall* for appellant. **Argued:** *Joy L. Marshall.*

**On brief:** *Dinsmore & Shohl, LLP, Kelli J. Amador, Gregory P. Mathews*, and *Jeffrey P. Hinebaugh* for appellees. **Argued:** *Kelli J. Amador.*

APPEAL from the Franklin County Court of Common Pleas

EDELSTEIN, J.

{¶ 1} Plaintiff-appellant, Darren Johnson, appeals from an order of the Franklin County Court of Common Pleas granting the motion to dismiss of defendants-appellees, Fifth Third Bancorp ("Fifth Third") and Payton Rippeth. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} On April 21, 2025, Mr. Johnson filed a complaint against appellees alleging intentional infliction of emotional distress, negligence, premises liability, and defamation. Mr. Johnson alleged that on April 22, 2023, he visited a Fifth Third branch in Bexley.

(Compl. at ¶ 7.)  Prior to entering the bank, Mr. Johnson alleged he stopped to look at his phone and returned it to his pocket.  (Compl. at ¶ 8.)  He then entered the bank while wearing a face mask "as was and is customary following the COVID" pandemic.  (Compl. at ¶ 9.)  Mr. Johnson alleged Ms. Rippeth "hurriedly spoke to all the tellers" when he entered and asked a teller to activate the bank's panic alarm.  (Compl. at ¶ 10-11.)  Mr. Johnson alleged he made a withdrawal at the Fifth Third branch and, when he left, several police cars arrived in the parking lot.  (Compl. at ¶ 13-17.)  The complaint stated Ms. Rippeth reported to police that he had a handgun when he entered the Fifth Third branch, and law enforcement followed Mr. Johnson as he drove to a nearby Chase Bank branch to deposit the funds he had just withdrawn.  (Compl. at ¶ 18-19.)  Mr. Johnson alleged law enforcement arrived at his house several days later to question him as a "suspect in a[n] armed robbery allegation."  (Compl. at ¶ 22.)  Mr. Johnson sought monetary relief in the form of actual and punitive damages.

{¶ 3}  On June 20, 2025, appellees filed a motion to dismiss the complaint pursuant to Civ.R. 12(B)(6).  Appellees argued the applicable statute of limitations barred Mr. Johnson's claims for defamation and intentional infliction of emotional distress.  Additionally, appellees argued Mr. Johnson failed to plead factual allegations to satisfy the elements of his claims for negligence and premises liability.

{¶ 4}  In an August 18, 2025 decision, the trial court granted appellees' motion to dismiss.  The trial court determined the applicable one-year statute of limitations barred Mr. Johnson's claims for defamation and intentional infliction of emotional distress.  The court reasoned that although a four-year statute of limitations ordinarily applies to claims of intentional infliction of emotional distress, the one-year statute of limitations applied in this case because the claim for intentional infliction of emotional distress is grounded in the same factual allegations underlying his defamation claim.  (Decision at 5-6.)  As to the negligence claim, the trial court found that whether it construed Mr. Johnson's claim for one of ordinary negligence or one of negligent training or supervision, Mr. Johnson failed to allege how appellees were negligent or how that negligence proximately caused Mr. Johnson's injuries. (Decision at 8-9.)  Lastly, as to Mr. Johnson's claim of premises liability, the trial court found Mr. Johnson failed to allege "a location where the harm occurred to him; that his injuries were sustained on a property owned by Defendant Fifth Third; or even

how a condition or hazard on the property caused his alleged injuries." (Decision at 10.) The trial court issued an October 29, 2025 order granting appellees' motion to dismiss and dismissed Mr. Johnson's complaint with prejudice. Mr. Johnson timely appeals.

## II. Assignments of Error

{¶ 5} Mr. Johnson raises the following two assignments of error for our review:

> [I.] THE TRIAL COURT ERRED IN ASSUMING FACTS NOT ALLEGED IN THE COMPLAINT WHEN GRANTING A DISMISSAL AGAINST MR. JOHNSON PURSUANT TO OHIO CIVIL RULE 12(B)(6).

> [II.] THE TRIAL COURT ERRED IN DISMISSING THE COMPLAINT WITH PREJUDICE WHEN THE COMPLAINT COULD HAVE BEEN OTHERWISE PLEAD.

## III. First Assignment of Error—Motion to Dismiss

{¶ 6} In his first assignment of error, Mr. Johnson argues the trial court erred in assuming facts not alleged in the complaint when it granted appellees' motion to dismiss. More specifically, Mr. Johnson asserts the trial court erroneously determined the statute of limitations bars his claims for intentional infliction of emotional distress and defamation.

{¶ 7} A motion to dismiss for failure to state a claim upon which relief can be granted under Civ.R. 12(B)(6) is a procedural test of a civil complaint's sufficiency. *Cool v. Frenchko*, 2022-Ohio-3747, ¶ 13 (10th Dist.), quoting *Morrow v. Reminger & Reminger Co., L.P.A.*, 2009-Ohio-2665, ¶ 7 (10th Dist.). Dismissal of a complaint pursuant to Civ.R. 12(B)(6) is appropriate "only if it appears beyond a [reasonable] doubt that the plaintiff can prove no set of facts entitling the plaintiff to recovery." *Bullard v. McDonald's*, 2021-Ohio-1505, ¶ 11 (10th Dist.). In determining whether dismissal is appropriate, the trial court "must presume all factual allegations contained in the complaint [as] true and must make all reasonable inferences in favor of the plaintiff." *Id.* "The court need not, however, accept as true any unsupported and conclusory legal propositions advanced in the complaint." *Id.* at ¶ 11. When deciding a Civ.R. 12(B)(6) motion, a court may not consider factual allegations or evidence outside of the complaint. *See, e.g., State ex rel. Scott v. Cleveland*, 2006-Ohio-6573, ¶ 26.

{¶ 8} We review a trial court's dismissal pursuant to Civ.R. 12(B)(6) de novo. *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State*, 2016-Ohio-478, ¶ 12, citing *Perrysburg Twp. v. Rossford*, 2004-Ohio-4362, ¶ 5. Our review is limited to the allegations contained in the complaint. *See, e.g., Schmitz v. Natl. Collegiate Athletic Assn.*, 2018-Ohio-4391, ¶ 10, citing *Loveland Edn. Assn. v. Loveland City School Dist. Bd. of Edn.*, 58 Ohio St.2d 31, 32 (1979).

{¶ 9} Mr. Johnson's complaint set forth claims for defamation, intentional infliction of emotional distress, negligence, and premises liability. Under his first assignment of error, however, Mr. Johnson makes no argument related to the dismissal of his claims for negligence and premises liability. Therefore, our analysis focuses on the trial court's dismissal of Mr. Johnson's claims for intentional infliction of emotional distress and defamation.

{¶ 10} To establish a claim for intentional infliction of emotional distress, a plaintiff must prove (1) the defendant intended to cause the plaintiff serious emotional distress, (2) the defendant's conduct was " 'extreme and outrageous,' " and (3) the conduct proximately caused the plaintiff's serious emotional distress. *Meminger v. Ohio State Univ.*, 2017-Ohio-9290, ¶ 14 (10th Dist.), quoting *Phung v. Waste Mgt.*, 71 Ohio St.3d 408, 410 (1994). Serious emotional distress requires "the emotional injury [to] be so debilitating and severe that 'a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.' " *Williams v. NAACP*, 2019-Ohio-1897, ¶ 28 (10th Dist.), quoting *Paugh v. Hanks*, 6 Ohio St.3d 72, 78 (1983). Examples of serious emotional distress include " 'traumatically induced neurosis, psychosis, chronic depression, and phobia.' " *Id.*, quoting *Ford Motor Credit Co. v. Ryan*, 2010-Ohio-4601, ¶ 56, citing *Paugh* at 78.

{¶ 11} " 'Defamation, which includes both libel and slander, is a false publication causing injury to a person's reputation, exposing the person to public hatred, contempt, ridicule, shame or disgrace, or affecting the person adversely in his or her trade or business.' " *Webber v. Ohio Dept. of Pub. Safety*, 2017-Ohio-9199, ¶ 35 (10th Dist.), quoting *Knowles v. Ohio State Univ.*, 2002-Ohio-6962, ¶ 22 (10th Dist.). "Generally, slander refers to spoken defamatory words and libel refers to written defamatory words." *Id.*, citing *Holley v. WBNS 10TV Inc.*, 2002-Ohio-4315, ¶ 29 (10th Dist.).

{¶ 12} To establish a claim of defamation, a plaintiff must demonstrate: " ' "(1) that a false statement was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the required degree of fault in publishing the statement." ' " *Pratt v. Univ. of Cincinnati*, 2018-Ohio-2162, ¶ 17 (10th Dist.), quoting *Rarden v. Ohio Dept. of Rehab. & Corr.*, 2012-Ohio-5667, ¶ 27 (10th Dist.), quoting *Pollock v. Rashid*, 117 Ohio App.3d 361, 368 (1st Dist. 1996).

{¶ 13} The trial court determined Mr. Johnson's claims for defamation and intentional infliction of emotional distress were untimely. A claim of defamation is subject to a one-year statute of limitations. *Rhoads v. Olde Worthington Bus. Assn.*, 2024-Ohio-2178, ¶ 55 (10th Dist.). *See* R.C. 2305.11(A) ("[a]n action for libel [or] slander . . . shall be commenced within one year after the cause of action accrued"). " 'It is settled that "[a] cause of action for defamation accrues on the date of publication of the alleged defamatory matter." ' " *Rhoads* at ¶ 54, quoting *Stubbs v. Ohio Dept. of Rehab. & Corr.*, 2012-Ohio-1374, ¶ 16 (10th Dist.), quoting *Pankey v. Ohio Adult Parole Auth.*, 2011-Ohio-4209, ¶ 9 (10th Dist.); *Singh v. ABA Publishing*, 2003-Ohio-2314, ¶ 22 (10th Dist.) ("Ohio has held that the statute of limitations for defamation, be it libel or slander, begins to run at the time words are written or spoken.").

{¶ 14} Ordinarily, a claim for intentional infliction of emotional distress is subject to a four-year statute of limitations. *Cummins v. Madison Corr. Inst.*, 2011-Ohio-1608, ¶ 9 (10th Dist.). *See* R.C. 2305.09(D) ("an action for any of the following causes shall be brought within four years after the cause thereof accrued" including "[f]or an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 1304.35, 2305.10 to 2305.12, and 2305.14 of the Revised Code"). However, when the claims for defamation and intentional infliction of emotional distress arise from the same factual allegations, the one-year statute of limitations applicable to the defamation claim also applies to the intentional infliction of emotional distress claim. *Ibanez v. Hutchins*, 2012-Ohio-5040, ¶ 9 (10th Dist.), quoting *Doe v. First United Methodist Church*, 68 Ohio St.3d 531, 536 (1994) ("the true nature or subject matter of the acts giving rise to the complaint" determines the applicable statute of limitations); *Cleavenger v. B.O.*, 2022-Ohio-454, ¶ 16 (9th Dist.) ("When a claim for intentional infliction of emotional distress is based upon conduct

actionable as a claim for defamation, the one-year statute of limitations applies."); *Weidman v. Hildebrant*, 2024-Ohio-2931, ¶ 27 (where the alleged conduct underlying an intentional infliction of emotional distress claim "is virtually identical to the alleged conduct underlying the defamation claim," the one-year statute of limitations in R.C. 2305.11(A) applies to both claims because "[t]o hold otherwise would allow a plaintiff to repackage a defamation claim as a separate cause of action to avail a longer statute of limitations").

{¶ 15} Mr. Johnson's complaint alleges he visited the Fifth Third branch on April 22, 2023. (Compl. at ¶ 7.) While inside the bank, Mr. Johnson alleged he "grew concerned," and, when he left the bank and police arrived, he became "extremely nervous and in fear." (Compl. at ¶ 12, 17.) The complaint further alleged police followed Mr. Johnson as he drove from the Fifth Third branch to a nearby Chase Bank branch, "increasing the panic he had began to feel." (Compl. at ¶ 18.) Mr. Johnson alleged police left a business card at his house "[s]everal days later" and, when police eventually questioned him, they informed him he had been suspected of armed robbery. (Compl. at ¶ 20-22.) According to his complaint, these events caused Mr. Johnson to "suffer[] great mental anguish and emotional distress." (Compl. at ¶ 24.)

{¶ 16} The trial court determined Mr. Johnson's claim for intentional infliction of emotional distress is grounded in the same allegations underlying his defamation claim. We agree. Mr. Johnson alleged in his complaint that Ms. Rippeth confused his actions of placing his phone in his pocket and wearing a mask before entering the branch as the actions of an individual attempting to commit an armed robbery and reported that belief to other Fifth Third employees and to police. He specifically alleged he saw Ms. Rippeth communicate with other employees while he was in the branch, he felt concern, nervousness, and fear while still in the bank on April 22, 2023, and those feelings escalated to panic when he drove away from the bank. Additionally, Mr. Johnson alleged police informed him several days later he had been the suspect in an armed robbery. Thus, Mr. Johnson's claims for intentional infliction of emotional distress and defamation both rely on his allegation that he was wrongly suspected of attempting to commit armed robbery at the bank.

{¶ 17} To the extent Mr. Johnson now argues his claim for intentional infliction of emotional distress is limited to the moment Ms. Rippeth allegedly instructed another teller to trigger the bank's panic alarm and is distinct from any allegedly defamatory statements Ms. Rippeth made, we note his complaint does not isolate the claims in the manner he now suggests. Instead, Mr. Johnson's complaint sets forth, in paragraphs 1 through 24, a common set of factual allegations related to all four of his claims, and he relied on the same factual allegations to support his intentional infliction of emotional distress and defamation claims. His intentional infliction of emotional distress claim expressly restates paragraphs 1 through 22 of his complaint. (Compl. at ¶ 25.) Those paragraphs, as detailed above, describe Mr. Johnson's entire experience inside the Fifth Third branch and include both Ms. Rippeth's actions *and* statements to third parties. Mr. Johnson describes his emotional reaction as unfolding throughout the entire incident and does not singularly link the alleged emotional distress to the moment the panic alarm was triggered. As set forth in his complaint, therefore, Mr. Johnson's claims for intentional infliction of emotional distress and defamation are both grounded in the same factual allegations.

{¶ 18} Because Mr. Johnson's claims for intentional infliction of emotional distress and defamation are both grounded in the same allegations arising from Ms. Rippeth's communication on April 22, 2023, those claims accrued that day or, at most, several days later when he spoke to law enforcement. Therefore, we agree with the trial court that Mr. Johnson's claims for defamation and intentional infliction of emotional distress are both subject to a one-year statute of limitations. *Ibanez*, 2012-Ohio-5040, at ¶ 9 (10th Dist.). Mr. Johnson did not file his complaint until April 21, 2025, nearly two full years after the causes of action for defamation and intentional infliction of emotional distress accrued. Accordingly, both the defamation and intentional infliction of emotional distress claims are untimely.

{¶ 19} Mr. Johnson argues the trial court erred in determining the date of accrual of these claims. He asserts the trial court assumed facts not in the complaint to determine the date upon which he learned of the allegedly defamatory statements, and the trial court therefore erred by failing to construe the facts in the complaint in a light most favorable to him. He argues he did not learn of the allegedly defamatory statements made to police until March 26, 2025, when he obtained a police report of the incident, relying on an affidavit he

filed in response to appellees' motion to dismiss stating the same. Thus, Mr. Johnson asserts the discovery rule should apply as an exception to the general rule that a defamation claim accrues when the defamatory statement is published. *See Weidman*, 2024-Ohio-2931, at ¶ 14, quoting *Norgard v. Brush Wellman, Inc.*, 2002-Ohio-2007, ¶ 8 ("Under the discovery rule, 'a cause of action does not arise until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, that he or she was injured by the wrongful conduct of the defendant.' ").

{¶ 20} Through his argument, Mr. Johnson ignores the contents of his complaint. He specifically alleged that on April 22, 2023, he saw Ms. Rippeth "hurriedly [speak] to all of the tellers," causing him to grow concerned. (Compl. at ¶ 11-12.) He described his escalating emotions as police arrived at the Fifth Third branch as he was exiting and then followed him to the Chase Bank branch. (Compl. at ¶ 17-18.) Though he did not provide a specific date and time for his allegation that Ms. Rippeth told police he "had a 'large handgun' in his possession" (Compl. at ¶ 19.), he specifically alleged law enforcement left a business card at his house "[s]everal days" after April 22, 2023, that he was questioned by police, and that police "informed [him] that he had been the suspect in a[n] armed robbery allegation." (Compl. at ¶ 20-22.) Additionally, his complaint did not allege he only learned of the allegedly defamatory statements when he obtained the police report on March 26, 2025 or that the allegedly defamatory statements were secretive, concealed, or otherwise inherently unknowable to Mr. Johnson until he obtained a copy of the police report. *See Weidman* at ¶ 1 ("the discovery rule applies to claims of libel based on reputational injuries when the publication of the libelous statement was secretive, concealed, or otherwise inherently unknowable to the plaintiff due to the nature of the publication" and "applies to derivative claims that are premised on the same allegations as the claim of libel"). Instead, by his own account, Mr. Johnson learned of the allegation of armed robbery within several days of his visit to the Fifth Third branch on April 22, 2023. From the face of his complaint, the alleged defamatory statements underlying Mr. Johnson's claims for defamation and intentional infliction of emotional distress were made on April 22, 2023, and, thus, his claims for defamation and intentional infliction of emotional distress accrued on that date.

{¶ 21} For these reasons, we find the trial court did not err in determining the accrual date of Mr. Johnson's claims for defamation and intentional infliction of emotional

distress and concluding both claims are grounded in the same allegations. Because both claims are subject to a one-year statute of limitations, the trial court correctly determined the claims are time-barred and must be dismissed under Civ.R. 12(B)(6). We overrule Mr. Johnson's first assignment of error.

## IV. Second Assignment of Error—Dismissal with Prejudice

{¶ 22} In his second and final assignment of error, Mr. Johnson argues the trial court erred in dismissing the complaint with prejudice. Mr. Johnson asserts the trial court should have allowed him to amend his complaint rather than dismiss with prejudice. We disagree.

{¶ 23} A dismissal pursuant to Civ.R. 12(B)(6) constitutes an involuntary dismissal under Civ.R. 41(B). *Kromer v. Arthritis Found., Inc.*, 2025-Ohio-661, ¶ 33 (10th Dist.), citing *Reasoner v. Columbus*, 2005-Ohio-468, ¶ 7 (10th Dist.). Aside from a dismissal for lack of subject-matter jurisdiction or lack of personal jurisdiction, " 'involuntary dismissals constitute "adjudication[s] on the merits" unless the dismissal order specifies [to] the contrary." ' " *Id.*, quoting *State ex rel. Arcadia Acres v. Ohio Dept. of Job & Family Servs.*, 2009-Ohio-4176, ¶ 14. Thus, a dismissal for failure to state a claim upon which relief can be granted under Civ.R. 12(B)(6) is an "adjudication on the merits." *Id.*, quoting *Arcadia Acres* at ¶ 15. Once the merits of the case have been adjudicated, the dismissal is with prejudice even if the trial court does not specifically add the words "with prejudice" to the judgment. *Id.* at ¶ 35. *See also McCullough v. Bennett*, 2024-Ohio-2783, ¶ 27, citing *Moore v. Mt. Carmel Health Sys.*, 2020-Ohio-4113, ¶ 8 (a determination a claim is untimely based on the statute of limitations is a judgment "on the merits"); *Lewis v. Hayes*, 2009-Ohio-640, ¶ 26 (10th Dist.), citing *La Barbera v. Batsch*, 10 Ohio St.2d 106, 113-14 (1967) ("a dismissal for failure to commence within the applicable statute of limitations is a dismissal with prejudice because the merits of the case have already been litigated").

{¶ 24} As we explained in our resolution of Mr. Johnson's first assignment of error, the trial court correctly determined the applicable one-year statute of limitations operated to bar Mr. Johnson's claims for defamation and intentional infliction of emotional distress. Mr. Johnson does not challenge on appeal the trial court's decision to dismiss his claims for negligence and premises liability for failure to state a claim upon which relief can be

granted. The trial court adjudicated the merits of all four of Mr. Johnson's claims, and the trial court did not err in dismissing those claims with prejudice. *Kromer* at ¶ 35. Though Mr. Johnson argues he should be permitted to amend his complaint to sufficiently plead these claims, we note Mr. Johnson did not seek leave to amend his complaint in the trial court. Instead, he responded to appellees' motion to dismiss and argued he had pled sufficient facts to survive the motion. Mr. Johnson does not articulate any justification for converting the trial court's dismissal of his complaint into a judgment otherwise than on the merits such that the dismissal would be without prejudice. *Id.* Therefore, we overrule Mr. Johnson's second and final assignment of error.

## V. Disposition

{¶ 25} Based on the foregoing reasons, the trial court did not err in granting appellees' Civ.R. 12(B)(6) motion to dismiss Mr. Johnson's complaint for failure to state a claim upon which relief can be granted. Having overruled Mr. Johnson's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BEATTY BLUNT and MENTEL, JJ., concur.

————————————