LOVELAND EDUCATION ASSOCIATION, APPELLEE, *v.* LOVELAND CITY SCHOOL DISTRICT BOARD OF EDUCATION ET AL., APPELLANTS.

(No. 78-593—Decided April 18, 1979.)

32

*Green, Schiavoni, Murphy, Haines & Sgambati Co.,
L. P. A., Mr. Eugene Green, Mr. Barry R. Laine, Messrs.
Legler, Lang & Kuhns* and *Mr. James R. Kirkland,* for
appellee.

*Bauer, Morelli & Heyd Co., L. P. A.,* and *Mr. Arnold
Morelli,* for appellants.

CELEBREZZE, C. J.  The narrow issue raised in this appeal is whether the second amended complaint fails to state a cause of action pursuant to Civ. R. 12(B)(6).  Our scrutiny is thus limited to the four corners of the complaint and the agreement incorporated as an exhibit thereto.  As indicated above, the second amended complaint sought a declaratory judgment establishing the recognition agreement as a valid and legally enforceable' contract, voluntarily executed by both the board and the teachers association.

Appellants contend that judicial enforcement of the agreement would involve a court of law in the strictly legislative process of rule-making which is vested exclusively in a board of education.  Furthermore, they assert that acknowledging the validity of these preliminary agreements would place a judicial stamp of approval on an unlawful delegation and impairment of the board's statutory responsibility to manage and control its schools.'

---

[2]Appellants refer to the provisions of R. C. 3313.20 and 3313.47 respectively.  R. C. 3313.20 reads, in pertinent part:

We disagree. The underlying issue presented by this appeal does not involve judicial intervention into the rule-making prerogatives of the board. On the contrary, the relevant inquiry must be directed at the scope of the statutory authority of that administrative body to negotiate towards the ultimate goal of a collective bargaining agreement.

In reaching its decision that appellee's complaint overcame the hurdle of a motion to dismiss, the Court of Appeals relied upon the rationale expressed in *Dayton Teachers Assn.* v. *Dayton Bd. of Edn.* (1975), 41 Ohio St. 2d 127. In that case we examined various provisions of R. C. Chapters 3313 and 3319 to ascertain whether a school board's attempt to bind itself to a written collective bargaining agreement exceeded any statutory limitations placed upon its contractual power.

As a result of that analysis, we concluded, at page 131, that "a board of education has been granted broad discretionary powers in its *dual role* of manager of schools and *employer of teachers.*" (Emphasis added.) In addition, in the first paragraph of the syllabus of that decision we recognized the authority of a board of education to "negotiate" towards a collective bargaining agreement so long as its statutory duties and responsibilities were not compromised, as follows:

"*A board of education is vested with discretionary authority to negotiate* and to enter into a collective bargaining agreement with its employees, so long as such agreement does *not conflict with or purport to abrogate the duties and responsibilities imposed upon the board of education by law.*" (Emphasis added.)

Although the *Dayton* case involved a previously exe-

---

"The board of education shall make such rules and regulations as are necessary for its government and the government of its employees * * *."

R. C. 3313.47 indicates, in pertinent part:

"Each city, exempted village, or local board of education shall have the management and control of all of the public schools of whatever name or character in its respective district. * * *"

cuted collective bargaining agreement and the present appeal concerns an arrangement outlining procedures to be followed in an attempt to reach the collective bargaining agreement, the reasons for upholding one are equally applicable to the other. The Court of Appeals below took note of that fact when it concluded as follows:

"The 'Recognition Agreement' *sub judice* by its own terms is one providing a mechanism with which the Association and the Board—entities which had confessed their mutual concerns and ambitions in the public interest.—could attempt to reach understandings regarding terms and conditions of employment of teachers.

"The Supreme Court has declared that the Board is vested with limited discretionary authority to negotiate and to enter into a collective bargaining agreement with its teachers. See *Dayton Teachers Assn.* v. *Dayton Bd. of Education, supra.*

"If, then, the Board could negotiate and enter into a final agreement, we see no reason based on logic or law why the Board should not be able to contract in the terms of the agreement before us. *A fortiori*, the ultimate can include the preliminary and the Board is vested with authority to agree upon a negotiation procedure."

The critical inquiry, whether it involves a collective bargaining agreement or a preliminary agreement depicting the process of negotiation directed towards that end, is whether *either* accord "conflict[s] with or purport[s] to abrogate the duties and responsibilities imposed upon the board of education by law." *Dayton Teachers Assn., supra.* For example, a clause in the recognition agreement providing for binding issue arbitration concerning the terms of a proposed collective bargaining agreement would be an unlawful delegation of the board's statutory obligations.[3]

---

[3]Section 8, Article V of the recognition agreement provides for the creation of an "advisory panel" "[i]n case of disagreement about the meaning or application of this agreement, or in the event an agreement is not reached by negotiations after full consideration of proposals and counter-proposals." However, the advisory panel makes no final or

The present agreement reflects a policy decision by the board that "mutual understanding, cooperation, and effective communications" are the hallmarks of a successful educational program in the Loveland schools. Article II of the agreement indicates the following:

"The Board and the Association firmly believe that the primary function of the Board and the professional staff is to assure each boy and girl attending the Loveland Schools an effective educational program. The Board recognizes that teaching is a profession; the Board and Association believe that the objectives of the educational program are realized to a high degree when mutual understanding, cooperation, and effective communications exist between the Board and the teaching staff."

A further examination of the writing reveals an express recognition, by both parties, of the board's duties and responsibilities under the law. For example, in Article IV they concede that the "legal responsibilities" of the school board cannot be diminished in any way by the provisions of the agreement:

"[t]he Board and the Association recognize that the Board is the legally constituted body responsible for the determination of policies covering all aspects of the Loveland Public School System. The Board recognizes that it must operate in accordance with all statutory provisions of the State, and such other rules and regulations as are promulgated by the Department of Education in accordance with such statutes. The Board cannot reduce, negotiate, nor delegate its legal responsibilities. * * *"

Article VI also describes the effect of a provision found to be "contrary to law":

"[i]f any provisions of this Document or any application of the Document to any certificated personnel or person shall be found contrary to law, then this provision or application shall be deemed invalid, except to the extent

binding decision regarding any of those proposals and its role is limited to that of "fact-finders, conferring with both parties and making *recommendations* for settlement of the issue(s) in question * * *." (Emphasis added.)

permitted by law, but all other provisions hereof shall continue in full force and effect."

In addition, there is a conspicuous absence of any language that could be construed to require the parties to reach a final agreement. The limited extent of the undertaking on behalf of the school board is set forth in Article IV, which states:

"This recognition constitutes an agreement between the Board and the Association to *attempt to reach* mutual understandings regarding terms and conditions of employment for members of the negotiating unit. * * *" (Emphasis added.)

In conclusion, a recognition agreement, voluntarily executed by a board of education and a teachers association, outlining procedures to be followed in the process of negotiating for a collective bargaining agreement, is valid and enforceable, so long as such agreement does not conflict with or purport to abrogate the duties and responsibilities imposed upon a board of education by law. The present agreement, on its face, contains sufficient safeguards to prevent that proscribed conflict or abrogation.

In light of the foregoing, this court concludes only that appellee's second amended complaint has overcome the obstacle of Civ. R. 12(B)(6). Whether the *application* or *enforcement* of any of its terms would amount to an unlawful impairment or delegation of the Board's policy-making prerogatives, in a particular instance, is not now before us. Such a determination must be left to the court below if called upon to supervise its implementation. Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

HERBERT, W. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.

P. BROWN, J., dissents.