[Cite as *Gadway v. Univ. of Toledo*, 2025-Ohio-1983.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Brinda Gadway, | : | |
| Plaintiff-Appellant, | : | No. 25AP-128 |
| | | (Ct. of Cl. No. 2024-00477JD) |
| v. | : | (ACCELERATED CALENDAR) |
| University of Toledo, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on June 3, 2025

**On brief:** *Spangenberg Shibley & Liber LLP, Nicholas A. Dicello*, and *Kevin C. Hulick*, for appellant. **Argued:** *Kevin C. Hulick*.

**On brief:** *Dave Yost*, Attorney General, *Daniel R. Forsythe*, and *Maggie Shaver*, for appellee. **Argued:** *Daniel R. Forsythe*.

APPEAL from the Court of Claims of Ohio

EDELSTEIN, J.

{¶ 1} Plaintiff-appellant, Brinda Gadway, appeals from the December 9, 2024 judgment of the Court of Claims of Ohio dismissing her complaint against defendant-appellee, University of Toledo ("university"), pursuant to Civ.R. 12(B)(6). For the foregoing reasons, we affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} On May 30, 2024, Ms. Gadway, as administrator of the Estate of Randall Gadway, commenced a wrongful death action against the university—a public university—in the Court of Claims of Ohio. The complaint alleged that, following a successful brain surgery, Ms. Gadway's husband, decedent Randall Gadway, was discharged on

November 20, 2021 to Merit House, a skilled nursing facility in Toledo, for a short period of physical rehabilitation. (May 30, 2024 Compl. at ¶ 17-21.) The complaint also alleged that, by November 22, 2021, Merit House employees observed Mr. Gadway exhibiting symptoms indicative of a head injury, including confusion, agitation, pacing throughout the night, unsteadiness on his feed, multiple falls, unresponsiveness, bruising to the face, lethargy, sleeping throughout the day, and head pain. (*See* Compl. at ¶ 24-35.) The complaint further alleged Dr. Kate Szymanski, who worked at Merit House as part of her employment with the university, examined Mr. Gadway on November 22, 2021 but did not refer him to the emergency room to rule out a head injury. (Compl. at ¶ 4-5, 29-32.) Thus, the complaint stated that after observing her husband's condition worsen, Ms. Gadway transported Mr. Gadway to the emergency room on December 2, 2021, where he was diagnosed with, among other things, a subdural hematoma (brain bleed). (*See* Compl. at ¶ 38-44.) After being hospitalized for several weeks, Mr. Gadway was transferred to hospice care on December 29, 2021, and he passed away on January 4, 2022. (Compl. at ¶ 45, 51.)

{¶ 3} The complaint filed in the court of claims on May 30, 2024—which is the subject of this appeal—alleged that Mr. Gadway suffered permanent injuries and subsequently died as a direct and proximate cause of Dr. Szymanski's failure to provide medical care consistent with the applicable standards of care. (Compl. at ¶ 47-51.) The complaint further alleged that Dr. Szymanski's negligence caused Mr. Gadway to suffer an "untimely and wrongful death." (Compl. at ¶ 50-52.) Ms. Gadway had also alleged similar claims against Merit House, Dr. Szymanski, and other private medical providers involved in Mr. Gadway's care (but not the university) in a complaint filed on January 3, 2024 in Lucas County Court of Common Pleas case No. G-4801-CI-0202401025-000, which remains pending (the "Lucas County case"). (*See* Compl. at ¶ 12.)

{¶ 4} On July 2, 2024, the university moved to dismiss the court of claims complaint under Civ.R. 12(B)(6), arguing that the complaint conclusively shows on its face the action is barred by the two-year statute of limitations applicable to both wrongful death claims and claims brought against the state. In opposing that motion, Ms. Gadway asserted several exceptions to the university's statute-of-limitations defense, as discussed more below.

{¶ 5}   On December 9, 2024, the trial court issued an entry granting the university's motion to dismiss.  Ms. Gadway timely appealed from that judgment and asserts a sole assignment of error for our review:

> THE TRIAL COURT ERRED WHEN IT GRANTED [THE UNIVERSITY'S] MOTION TO DISMISS.

## II. ANALYSIS

{¶ 6}   A motion to dismiss for failure to state a claim upon which relief can be granted under Civ.R. 12(B)(6) is a procedural test of a civil complaint's sufficiency.  *Cool v. Frenchko*, 2022-Ohio-3747, ¶ 13 (10th Dist.), quoting *Morrow v. Reminger & Reminger Co. LPA*, 2009-Ohio-2665, ¶ 7 (10th Dist.).  Dismissal of a complaint pursuant to Civ.R. 12(B)(6) is appropriate "only if it appears beyond a doubt that the plaintiff can prove no set of facts entitling the plaintiff to recovery."  *Bullard v. McDonald's*, 2021-Ohio-1505, ¶ 11 (10th Dist.).  In determining whether dismissal is appropriate, the trial court "must presume all factual allegations contained in the complaint to be true and must make all reasonable inferences in favor of the plaintiff."  *Id.*  Attachments to the complaint are considered part of the complaint for all purposes. Civ.R. 10(C).  "The court need not, however, accept as true any unsupported and conclusory legal propositions advanced in the complaint."  *Bullard* at ¶ 11.  When deciding a Civ.R. 12(B)(6) motion, a court may not consider factual allegations or evidence outside of the complaint.  *See, e.g., State ex rel. Scott v. Cleveland*, 2006-Ohio-6573, ¶ 26.

{¶ 7}   We review a trial court's dismissal pursuant to Civ.R. 12(B)(6) de novo.  *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State*, 2016-Ohio-478, ¶ 12, citing *Perrysburg Twp. v. Rossford*, 2004-Ohio-4362, ¶ 5.  Our review is limited to the allegations contained in the complaint.  *See, e.g., Schmitz v. NCAA*, 2018-Ohio-4391, ¶ 10, citing *Loveland Edn. Assn. v. Loveland City School Dist. Bd. of Edn.*, 58 Ohio St.2d 31, 32 (1979).

{¶ 8}   A defendant may only assert a statute-of-limitations defense through a Civ.R. 12(B)(6) motion—and a court may only grant such a motion—when the defense is apparent from the face of the complaint.  *Gore v. Mohamod*, 2022-Ohio-2227, ¶ 14 (10th Dist.); *Singleton v. Adjutant Gen. of Ohio*, 2003-Ohio-1838, ¶ 18 (10th Dist.).  To conclusively establish the statute-of-limitations defense, the complaint must show (1) the relevant statute of limitations and (2) the absence of factors that would toll the statute of limitations

or make it inapplicable. *Stafford v. Columbus Bonding Ctr.*, 2008-Ohio-3948, ¶ 23 (10th Dist.); *Singleton* at ¶ 19. A trial court properly grants a Civ.R. 12(B)(6) motion to dismiss based on a facially apparent statute-of-limitations defense where the complaint contains no allegations supporting an exception to the defense. *See, e.g., Strother v. Columbus*, 2022-Ohio-4097, ¶ 18 (10th Dist.).

{¶ 9} "Application of a statute of limitations presents a mixed question of law and fact; when a cause of action accrues is a question of fact, but in the absence of a factual issue, application of the limitations period is a question of law." *Schmitz* at ¶ 11, citing *Wells v. C.J. Mahan Constr. Co.*, 2006-Ohio-1831, ¶ 25 (10th Dist.), citing *Cyrus v. Henes*, 89 Ohio App.3d 172, 175 (9th Dist. 1993), *rev'd on other grounds*, 70 Ohio St.3d 640 (1994).

{¶ 10} The substance of a claim determines the appropriate statute of limitations. *Hunter v. Shenango Furnace Co.*, 38 Ohio St.3d 235, 237 (1988). Here, Ms. Gadway's theory of liability against the university is based on her contention that Dr. Szymanski failed to provide medical care consistent with the applicable standards of care, resulting in Mr. Gadway's untimely and wrongful death. (*See* Compl. at ¶ 22, 29-51.) Thus, Ms. Gadway's allegations involve a medical claim. *See* R.C. 2305.113(E)(3) (defining "medical claim"). To be sure, Ms. Gadway attached to her complaint an affidavit of merit from Dr. Christa Hoiland in support of her allegations against Dr. Szymanski to establish the adequacy of her medical claim, as required by Civ.R. 10(D)(2).

{¶ 11} Medical claims are generally subject to a one-year statute of limitations. R.C. 2305.113(A). In contrast, a civil action for wrongful death must be commenced "within two years after the decedent's death." R.C. 2125.02(F)(1). And, pursuant to R.C. 2743.16(A), "civil actions against the state . . . shall be commenced no later than two years after the date of accrual of the cause of action *or within any shorter period that is applicable to similar suits between private parties.*" (Emphasis added.) *See, e.g., Johnson v. Ohio Dept. of Rehab. & Corr.*, 2022-Ohio-2155, ¶ 8 (10th Dist.); *Marok v. Ohio State Univ.*, 2014-Ohio-1184, ¶ 19 (10th Dist.).

{¶ 12} In the trial court and on appeal, Ms. Gadway maintains the two-year statute of limitations applies because she is only alleging a wrongful death claim for damages to Mr. Gadway's next-of-kin. (*See* Dec. 9, 2024 Jgmt. at 6; Appellant's Brief at 3, 5, 10.) That is to say, Ms. Gadway disclaims bringing, on her husband's behalf, a survival claim against

the university for injuries Mr. Gadway suffered due to medical negligence while he was alive.

{¶ 13} Because Mr. Gadway passed away on January 4, 2022 and the complaint was filed in the court of claims on May 30, 2024—well over two years after his death—whether the complaint also alleges a medical claim subject to a one-year statute of limitations is, in this case, a distinction in form but not substance. Either way, the complaint conclusively shows, on its face, that an action for wrongful death *or* medical negligence filed on May 30, 2024 is barred by the statute of limitations applicable to those claims. Thus, for purposes of our analysis in this decision, we presume a two-year statute of limitations applied to Ms. Gadway's action.

{¶ 14} Generally, "a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed." *Collins v. Sotka*, 81 Ohio St.3d 506, 507 (1998). On the face of the complaint, we find the wrongful death action accrued no later than January 4, 2022, when Mr. Gadway passed away.

{¶ 15} " '[W]hen a complaint on its face is barred by a statute of limitation, [] it is the duty of the pleader to assert exceptions to the statute' ***in the complaint***." (Emphasis added.) *Strother*, 2022-Ohio-4097, at ¶ 17, quoting *Peterson v. Teodosio*, 34 Ohio St.2d 161, 174 (1973). In other words, "where a statute of limitations problem is evident from the allegations in a complaint itself, the complaint in order to withstand a motion to dismiss must contain further allegations to suggest why the limitations bar does not apply." *Gore*, 2022-Ohio-2227, at ¶ 16. *See also Strother* at ¶ 17; *Vogel v. Huron Cty. Commrs.*, 1993 Ohio App. LEXIS 2889, *5 (6th Dist. June 11, 1993) ("[W]here the complaint establishes a prima facie statute[-]of[-]limitations defense, then the plaintiff must bear the additional burden of pleading facts establishing an exception to the defense."). A plaintiff's failure to meet its burden will result in dismissal. *See Strother* at ¶ 18-23.

{¶ 16} To avoid operation of the statute-of-limitations defense, Ms. Gadway asserts three exceptions that would toll the statute of limitations or make it inapplicable: (1) the discovery rule; (2) equitable estoppel; and (3) equitable tolling.

{¶ 17} In support of those arguments, she alleged in her complaint that prior to filing suit in the Lucas County Court of Common Pleas or the court of claims, she sent a "notice of claim" to the Ohio Department of Administrative Service ("DAS") on

December 22, 2023. (Compl. at ¶ 10.) Apparently, Ms. Gadway's counsel mistakenly believed R.C. 2743.16—which relates to a claimant's duty to compromise certain claims against the state under DAS's Office of Risk Management ("ORM") program—applied to her claim against Dr. Szymanski as an employee of the university, as discussed more below. (*See* Compl. at ¶ 10-12.) Ms. Gadway alleged that on December 27, 2023[1], DAS "directed" her to "send the notice" to the university. (Compl. at ¶ 11.) And she alleged that on December 30, 2023, she "sent a and a notice of claim" to the university. (Sic.) (Compl. at ¶ 11.) Of note, none of the documents or the alleged correspondence were attached as exhibits to Ms. Gadway's complaint.

{¶ 18} On January 3, 2024, Ms. Gadway commenced the Lucas County case, initially including claims against Dr. Szymanski and other medical providers. (*See* Compl. at ¶ 12.) On February 28, 2024, the Ohio Attorney General's Office moved to dismiss Dr. Szymanski as a defendant in that case on the grounds that, at all relevant times, she was employed by the university and acting within the course and scope of her state employment. (*See* Compl. at ¶ 13.) Thus, the Attorney General's Office argued, the common pleas court lacked subject-matter jurisdiction over Ms. Gadway's claims against Dr. Szymanski

{¶ 19} Indeed, the Ohio Constitution provides that "[s]uits may be brought against the state, in such courts and in such manner, as may be provided by law." Ohio Constitution, Article. I, Section 16. Consistent with this provision, R.C. 2743.03 created the court of claims, vesting it with "exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in section 2743.02 of the Revised Code." *See* R.C. 2743.03(A)(1). Under R.C. 2743.03, actions for money damages against the state may only be brought in the court of claims. *See, e.g.*, *Smith v. Ohio State Univ.*, 2024-Ohio-764, ¶ 14 (explaining that the court of claims has original, exclusive jurisdiction over causes of action involving a civil suit for money damages against the state).

{¶ 20} For the purpose of determining the jurisdiction of the court of claims, the term "state" is broadly defined to include "all departments, boards, offices, commissions, agencies, institutions, and other instrumentalities of the state." R.C. 2743.01(A). The university is a public state university and part of the university system in Ohio. *See* R.C.

---

[1] Ms. Gadway's complaint actually alleges she received this direction from DAS on December 27, **2022**, but we presume this was scrivener's error. (*See* Compl. at ¶ 11.)

Chapters 3345 and 3364. Because the university is an instrumentality of the state, as defined in R.C. 2743.01(A), it is thus subject to suit in the court of claims. *See, e.g.*, *GLA Water Mgt. Co. v. Univ. of Toledo*, 2011-Ohio-5034, ¶ 24 (6th Dist.).

{¶ 21} It is well-established that an action for money damages against a state employee cannot be pursued in a common pleas court ***unless*** the court of claims ***first*** determines the state employee has forfeited her immunity. *See, e.g.*, *Siegel v. State*, 2015-Ohio-441, ¶ 14 (10th Dist.), citing *Long v. Bowling Green State Univ.*, 1997 Ohio App. LEXIS 2837 (10th Dist. June 30, 1997) ("Only if the Court of Claims were to determine that [the doctor's] actions were manifestly outside the scope of [their] employment . . . would there be no immunity for [the doctor's] actions. It is only at this point that appellants could pursue their causes of action in the court of common pleas."). Under R.C. 9.86, a state officer or employee may lose statutory immunity from suit only if they are found to have acted "manifestly outside the scope of [their] employment or official responsibilities, or . . . with malicious purpose, in bad faith, or in wanton or reckless manner."

{¶ 22} R.C. 2743.02(F) vests exclusive original jurisdiction in the court of claims to determine whether a state-employee defendant is immune from suit. *See Siegel* at ¶ 15, citing *Theobald v. Univ. of Cincinnati*, 2006-Ohio-6208, ¶ 13, *Johns v. Univ. of Cincinnati Med. Assocs., Inc.*, 2004-Ohio-824, ¶ 26-30, and *Conley v. Shearer*, 64 Ohio St.3d 284, 287 (1992). As such, the Lucas County Court of Common Pleas is prohibited from exercising jurisdiction over the merits of the claims asserted against Dr. Szymanski unless and until the court of claims has decided that Dr. Szymanski is not entitled to personal immunity under R.C. 9.86. *See, e.g.*, *State ex rel. Sanquily v. Court of Common Pleas of Lucas Cty.*, 60 Ohio St.3d 78, 80-81 (1991); *Siegel*, 2015-Ohio-441, at ¶ 14-15.

{¶ 23} On March 13, 2024, Ms. Gadway voluntarily dismissed her claims against Dr. Szymanski in the Lucas County case. (Compl. at ¶ 14.) In the complaint she later filed in the court of claims, Ms. Gadway alleged that on March 18, 2024, the university "responded to [her December 30, 2023] notice and declined to compromise the claims." (*See* Compl. at ¶ 11, 15.) However, we note that she did not attach a copy of this correspondence to her complaint.

{¶ 24} Relying on this series of events, Ms. Gadway contends that the discovery rule, the doctrine of equitable estoppel, and/or the doctrine of equitable tolling should be applied

to render the claims alleged in her May 30, 2024 complaint as timely filed in the court of claims.  For the following reasons, we find those arguments unavailing.

### A.  Discovery Rule

**{¶ 25}** There is no dispute that, at all pertinent times, Dr. Szymanski was an employee of the university, a state entity.  (*See* Compl. at ¶ 1-5.)  Nonetheless, Ms. Gadway argues the "discovery rule" should toll the two-year statute of limitations until February 28, 2024, when the state "***confirm[ed]*** whether Dr. Szymanski was a state employee." (Emphasis added.)  (Appellant's Brief at 8, 13-20.)  In her complaint, Ms. Gadway alleged she "discovered that Dr. Szymanski . . . was a state employee to whom immunity applied" when counsel from the Attorney General's Office moved to dismiss Dr. Szymanski from the Lucas County case on that date.  (*See* Compl. at ¶ 12-13.)  On appeal, she argues that because she had "limited ability" to be aware of Dr. Szymanski's governmental ***immunity***—i.e., that Dr. Szymanski was, as a matter of law, acting within the course and scope of her employment with the university when her allegedly negligent conduct occurred—we should find the discovery rule tolled the statute of limitations until February 28, 2024.  (*See* Appellant's Brief at 13-20.)

**{¶ 26}**  Under the discovery rule, " 'a cause of action does not arise until the plaintiff discovers, ***or by the exercise of reasonable diligence should have discovered***, that he or she was injured by the wrongful conduct of the defendant.' "  (Emphasis added.) *Weidman v. Hildebrant*, 2024-Ohio-2931, ¶ 14, quoting *Norgard v. Brush Wellman, Inc.*, 2002-Ohio-2007, ¶ 8, citing *Collins*, 81 Ohio St.3d at 507, citing *O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84 (1983).  This is because " 'the application of the general rule "would lead to the unconscionable result that the injured party's right to recovery can be barred by the statute of limitations before he is even aware of its existence." ' "  *Weidman* at ¶ 14, quoting *O'Stricker* at 87, quoting *Wyler v. Tripi*, 25 Ohio St.2d 164, 168 (1971).  "The discovery rule allows those who are injured adequate time to seek relief on the merits without undue prejudice to defendants."  *Id.* at ¶ 14, citing *Oliver v. Kaiser Community Health Found.*, 5 Ohio St.3d 111, 114 (1983).  At the same time, "the discovery rule (concept) must be specially tailored to the particular context in which it is to be applied."  *Browning v. Burt*, 66 Ohio St.3d 544, 559 (1993).

{¶ 27} In this case, the fact that litigation was not initiated in the court of claims of Ohio until more than two years after Mr. Gadway's death and applied to the court of claims via R.C. 2743.16(A) is not open to debate. Nonetheless, Ms. Gadway submits that her claims against Dr. Szymanski did not accrue until after she and her counsel received confirmation from the state that Dr. Szymanski "was a state employee ***to whom immunity applied***." (Emphasis added.) (Compl. at ¶ 13.) (*See also* Appellant's Brief at 13-20 (Ms. Gadway arguing in her brief that her claim is timely under the discovery rule because of her "limited ability to be aware of the immunity.").)

{¶ 28} We have previously rejected such argument, finding "no case law to support this theory" and decidedly deferring "to the Supreme Court of Ohio to add or not to add this theory to the law of Ohio." *Clevenger v. Univ. of Cincinnati College of Medicine*, 2010-Ohio-88, ¶ 16 (10th Dist.). It is true, as Ms. Gadway notes, that in *Hines v. Univ. of Akron*, 2013-Ohio-5608 (10th Dist.), we applied the discovery rule to toll the statute of limitations until the Attorney General's Office alerted the injured party that the tortfeasor was ***an employee*** of a state entity. But, contrary to Ms. Gadway's contention, the narrowly tailored context of our decision in *Hines* is not present here.

{¶ 29} In *Hines*, the plaintiff was injured in a car accident in Franklin County and subsequently filed a lawsuit against the tortfeasor in the Franklin County Common Pleas Court. Unbeknownst to the plaintiff, the tortfeasor was employed as a graduate assistant by the University of Akron and was engaged in the course of his employment while operating his own personal motor vehicle in Franklin County at the time of the accident. *Hines* at ¶ 5-11. After that action was commenced in the common pleas court—and after the two-year statute of limitations expired—the Attorney General's Office moved to dismiss the case for lack of subject-matter jurisdiction, noting that a determination of immunity (or, more precisely, a lack of immunity) by the court of claims was required before a state employee could be sued in a common pleas court. *See id.* at ¶ 5-6, citing R.C. 2743.16(B). Thus, plaintiff's counsel voluntarily dismissed the action filed in the common pleas court and refiled a new lawsuit in the court of claims against the University of Akron less than one year after the voluntary dismissal, apparently believing the Ohio Savings Statute, R.C. 2305.19(A), would apply. *See id.* at ¶ 7-9. The University of Akron subsequently moved to

dismiss the action refiled in the court of claims, arguing it was barred by the two-year statute of limitations for suing a state entity. *See id.* at ¶ 10, citing R.C. 2743.16(A).

{¶ 30} We observed that the facts and circumstances in *Hines* presented "a very troubling scenario." *Id.* at ¶ 11. That is, "[a] graduate student from the University of Akron [was] operating a motor vehicle in the Columbus area." *Id.* "The motor vehicle was not a state vehicle." *Id.* at ¶ 22. "The collision did not occur on state property." *Id.* at ¶ 22. "Not all grad students are state employees, even those grad students who are state employees might well be in Columbus for purposes other than state business." *Id.* In light of these facts and circumstances, we found that "there was nothing about the collision that would alert a person injured in the collision to the defense that a person arguably responsible for the collision was a state employee acting within the scope of the person's employment with the state." *Id.* at ¶ 11.

{¶ 31} Under the "unique set of facts" presented in *Hines*, we concluded that neither plaintiff nor plaintiff's counsel could have reasonably known that the tortfeasor "was acting within the course of his employment or that ***he was even an employee*** of the University of Akron." (Emphasis added.) *Id.* at ¶ 22. In other words, "[c]ounsel for [plaintiff] had limited or no ability to be ***aware*** of the ***potential*** immunity." (Emphasis added.) *Id.* Given this particular and narrow context, we found the discovery rule "act[ed] as an exception that did not cause the statute of limitation to begin to run until the Attorney General's office alerted [plaintiff] . . . that [the tortfeasor] was ***an employee*** of the University of Akron." (Emphasis added.) *Id.* at ¶ 18. And, the sheer uniqueness of the situation presented in *Hines* is affirmed by the fact that our decision in *Hines* has never been cited by any other court, including this one.

{¶ 32} On review of the complaint filed in this case, we find Ms. Gadway failed to allege facts demonstrating the discovery rule should apply here. She does not claim she did not know that Dr. Szymanski was, at all relevant times, an employee of the university before the two-year statute of limitations expired. *Compare Hines* at ¶ 22. Nor does Ms. Gadway allege facts suggesting she had no way of reasonably knowing that Dr. Szymanski was acting within the course of her employment. *Compare Hines* at ¶ 22. To the contrary, the complaint, itself, indicates she knew Dr. Szymanski was, at all relevant times, a doctor who

was employed by a university medical care center and acting in her capacity as a medical professional.  (*See* Compl. at ¶ 4-15, 29-32, 47-50.)

{¶ 33} As set forth in the complaint, Mr. Gadway was treated by Dr. Szymanski in November 2021, diagnosed with a subdural hematoma and other injuries at the hospital on December 2, 2021, and passed away on January 4, 2022.  (Compl. at ¶ 29-45.)  Ms. Gadway alleges she sent DAS and the university a "notice of claim" in *late December 2023*.  (Compl. at ¶ 10-11.)  And, we note that, on *January 3, 2024*, Ms. Gadway requested Dr. Szymanski be served with summons and a copy of the complaint filed in the Lucas County case at the address for the University of Toledo's Comprehensive Care Center.[2]  (*See* July 29, 2024 Reply, Ex. A.)  Unlike the plaintiff in *Hines*, the allegations contained in Ms. Gadway's complaint establish that she and her counsel were aware, by at least December 2023, of the likelihood that Dr. Szymanski was employed by the university.  (*See* Compl. at ¶ 10-11.)  Thus, even construing Ms. Gadway's allegations in the light most favorable to her, the "very troubling scenario" presented in *Hines* is not present here.

{¶ 34} Unlike in *Hines*, it is evident from the complaint and Ms. Gadway's actions before filing her complaint in the court of claims that Ms. Gadway and her counsel were "***aware*** of the ***potential*** immunity" before the statute of limitations expired.  (Emphasis added.)  *Hines* at ¶ 22.  " '[T]he prudent course of action would have been to file suit in both the Ohio Court of Claims and the Court of Common Pleas for [Lucas] County, Ohio and then submit the immunity issue to the Court of Claims in order to determine which court was the appropriate forum.' "  *Schultz v. Univ. of Cincinnati College of Medicine*, 2010-Ohio-2071, ¶ 42 (10th Dist.), quoting *Clevenger* at ¶ 17.

{¶ 35} To the extent Ms. Gadway contends her ability to commence suit against the university hinged on the office of the Attorney General's affirmative endorsement of Dr. Szymanski's state employment, it is not well-taken.  Only the court of claims can determine

---

[2] The listed address for Dr. Szymanski in the complaint filed in the Lucas County case is: 3333 Glendale Ave., Toledo, OH 43614. This is the listed location for one of the university's medical care centers. *See* UToledo Health, *Comprehensive Care Center*, https://health.utoledo.edu/directions/glendale_east.html (accessed June 2, 2025) [https://perma.cc/AHW2-P4TR]. We also note this address is listed on Dr. Szymanski's "provider details" page on UToledo Health's website. *See* UToledo Health, *Provider Details: Kate Szymanski, DO, FAAFP, CMD*, https://health.utoledo.edu/findaphysician/Details/Kate-Szymanski_1106 (accessed June 2, 2025) [https://perma.cc/X92T-TBRN]. We make this point only to highlight that, unlike in *Hines*, there were reasonably accessible means for Ms. Gadway's counsel to discover Dr. Szymanski's employment with a state university long before the Attorney General's Office filed its February 2024 motion to dismiss in the Lucas County case.

state employee immunity.  R.C. 2743.02(F); *Marotto v. Ohio State Univ. Med. Ctr.*, 2012-Ohio-6158, ¶ 9 (10th Dist.) ("[W]hether a doctor is entitled to personal immunity from liability under R.C. 9.86 involves a question of law, an issue over which the Court of Claims has exclusive, original jurisdiction. . . . If the Court of Claims determines the employee is immune from liability, the plaintiff in the underlying action must assert his or her claims against the state, not the employee.").  Thus, it was incumbent on Ms. Gadway to file her complaint in the court of claims within the applicable statute of limitations period so that determination could be made.

{¶ 36}  For these reasons, we find Ms. Gadway failed to meet her burden of pleading facts establishing the discovery rule as an exception to the university's statute-of-limitations defense.  *See, e.g., Gore*, 2022-Ohio-2227, at ¶ 16.  As such, we conclude the two-year statute of limitations was not tolled by the discovery-rule exception.

## B.  Equitable Estoppel

{¶ 37}  Ms. Gadway also contends that the university's reliance on the statute of limitations is defeated by the doctrine of equitable estoppel.  (*See* July 23, 2024 Brief in Opp. at 2-3; Appellant's Brief at 21-26.)  Thus, she argues, the trial court erred when it did not equitably toll the limitations period applicable to her claim.  We disagree.

{¶ 38}  Under Ohio law, equitable estoppel "may be employed to prohibit the inequitable use of the statute of limitations."  *Luft v. Perry Cty. Lumber & Supply Co.*, 2003-Ohio-2305, ¶ 74 (10th Dist.).  " 'Equitable estoppel prevents relief when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment.' "  *Doe v. Archdiocese of Cincinnati*, 2008-Ohio-67, ¶ 7, quoting *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.*, 71 Ohio St.3d 26, 34 (1994).  *See also State ex rel. Cities Serv. Oil Co. v. Orteca*, 63 Ohio St.2d 295, 299 (1980) (explaining the doctrine of equitable estoppel "precludes a party from asserting certain facts where the party, by his conduct, has induced another to change his [or her] position in good faith reliance upon that conduct").

{¶ 39}  Implicit in this exception "is the principle that '[t]he purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice.' "  *Archdiocese of Cincinnati* at ¶ 7, quoting *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143, 145 (1990).  "In this context, 'courts have held that when applied to a limitations

defense, a plaintiff must show that ***the defendant*** misrepresented the length of the limitations period, or promised a better settlement if the plaintiff did not bring suit.' " (Emphasis added.)  *Cain v. Panitch*, 2018-Ohio-1595, ¶ 35 (10th Dist.), quoting *JRC Holdings, Inc. v. Samsel Servs. Co.*, 2006-Ohio-2148, ¶ 28 (11th Dist.).  Thus, for the doctrine of equitable estoppel to apply as an exception to the statute of limitations, the defendant must have made a misrepresentation that was calculated to induce a plaintiff to forego the right to sue.  *See Cain* at ¶ 39-41; *Hoeppner v. Jess Howard Elec. Co.*, 2002-Ohio-6167, ¶ 43 (10th Dist.).

{¶ 40} To invoke the doctrine, a party must demonstrate: (1) a factual misrepresentation; (2) the misrepresentation is misleading; (3) the misrepresentation induced actual reliance which was reasonable and in good faith; and (4) it caused detriment to the relying party.  *Hoeppner* at ¶ 43, citing *Romine v. Ohio State Hwy. Patrol*, 136 Ohio App.3d 650, 654 (10th Dist. 2000).

{¶ 41} Here, the trial court properly declined to apply the doctrine of equitable estoppel to extend the applicable statute of limitations.  On December 22, 2023—two weeks before the two-year statute of limitations expired—Ms. Gadway sent DAS a notice of claim.  (Compl. at ¶ 10.)  Ms. Gadway's counsel apparently believed R.C. 2743.16—which relates to a claimant's duty to compromise certain claims against the state under DAS's ORM program—applied.  (*See* Compl. at ¶ 10-12.)  But it did not.

{¶ 42} In relevant part, R.C. 2743.16(B) prohibits a person from filing a claim for "injury, death, or loss to person or property, as contemplated in sections 9.821 to 9.83 of the Revised Code" in the court of claims without first attempting to have that claim "compromised by the office of risk management in the department of administrative services or satisfied by the state's liability insurance."  Notably, R.C. 2743.16(D)(2) tolls the statute of limitations for claims if compromise is required by R.C. 2743.13(B).

{¶ 43} As used in R.C. 9.82 to 9.83, "state agency" "***does not include*** any state-supported institutions of higher education." (Emphasis added.) R.C. 9.82(G).  Thus, because the university is a state-supported institution of higher education, it is not a "state agency" as used in R.C. 9.82 to 9.83 and Ms. Gadway did not have a duty to compromise her claims with the state before filing suit in the court of claims under R.C. 2743.16(B).

{¶ 44} Ms. Gadway contends that because she sent a "notice of claim" to DAS and DAS "directed" her to "send the notice to the [university]," she was somehow induced to believe R.C. 2743.16(D)'s tolling provision would apply. (*See* Compl. at ¶ 10-11. *See also* Appellant's Brief at 23-26.) Notably, however, Ms. Gadway's December 22, 2023 letter to DAS, DAS's December 27, 2023, and Ms. Gadway's December 30, 2023 letter to the university are not part of the record before us on appeal. (*See* Compl. at ¶ 10-11.)

{¶ 45} To benefit from equitable estoppel, Ms. Gadway would have had to plead facts that, if proved, would demonstrate ***the university's*** efforts to prevent her from filing a lawsuit. Yet, Ms. Gadway's complaint is devoid of any allegation that the university or DAS made a misrepresentation that induced her to ***forgo filing suit***. Indeed, Ms. Gadway sued Dr. Szymanski and other private medical providers in the common pleas court on January 3, 2024. And, most significantly, Ms. Gadway does not allege in her complaint that the university or DAS misled or tricked her into waiting until May 2024 to file her complaint against the university in the court of claims. Even when viewed in the light most favorable to Ms. Gadway, the complaint contains no allegation that, if proved, would establish the defendant in this case—the university—or even DAS did anything that was designed to prevent her from filing a lawsuit in a timely manner.

{¶ 46} As such, we find Ms. Gadway's mistaken belief that R.C. 2743.16(B)'s compromise requirement applies to claims brought against state-supported institutions of higher education—through no fault of DAS or the university—does not warrant application of the equitable estoppel doctrine. In the absence of documentation depicting her correspondence with DAS and the university, and without any allegation in the complaint suggesting Ms. Gadway was told by the university (or DAS) that her "notice of claim" would toll the statute of limitations under R.C. 2743.16(D), we find no merit to Ms. Gadway's contention that equitable estoppel should apply.

### C. Equitable Tolling

{¶ 47} Ms. Gadway also contends the university's reliance on the statute of limitations is defeated by the doctrine of equitable tolling since she allegedly sent the university a notice letter in December 2023 and named Dr. Szymanski as a party-defendant in the Lucas County case in January 2024 and therefore the university did not incur

prejudice from the delay. (*See* July 23, 2024 Brief in Opp. at 3; Appellant's Brief at 27-29.) However, we find no merit to this claim.

{¶ 48} The doctrine of equitable tolling is to be applied sparingly and in only exceptional circumstances. *Stevens v. Ohio Dept. of Mental Health*, 2013-Ohio-3014, ¶ 19 (10th Dist.), citing *Moore v. Dept. of Rehab. & Corr.*, 2011-Ohio-1607, ¶ 21 (10th Dist.). " 'Equitable tolling is available only in compelling cases which justify a departure from established procedure.' " *Coleman v. Columbus State Community College*, 2015-Ohio-4685, ¶ 16 (10th Dist.), quoting *Sharp v. Ohio Civ. Rights Comm.*, 2005-Ohio-1119, ¶ 11 (7th Dist.). A litigant seeking equitable tolling must demonstrate she diligently pursued her rights, but some extraordinary circumstance stood in her way and prevented timely action. *In re Regency Village Certificate of Need Application*, 2011-Ohio-5059, ¶ 37 (10th Dist.). The doctrine is generally limited to circumstances in which an employee is intentionally misled or tricked into missing a filing deadline. *Stevens* at ¶ 19, citing *Moore* at ¶ 21. *See also Aronhalt v. Castle*, 2012-Ohio-5666, ¶ 32 (10th Dist.) (noting that equitable tolling generally requires fraud).

{¶ 49} To determine whether equitable tolling is appropriate in a particular case, courts generally consider: (1) lack of actual notice of the filing requirement; (2) lack of constructive notice of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the filing requirements. *Stevens* at ¶ 19, citing *Moore* at ¶ 21.

{¶ 50} Here, we find Ms. Gadway failed to demonstrate in her complaint an exceptional circumstance warranting the equitable tolling of the applicable statute of limitations. As alleged in the complaint, Ms. Gadway was aware of her potential claim against the university by December 2023. (*See* Compl. at ¶ 10-11.) And, in fact, she filed suit against Dr. Szymanski and the other private medical providers in the common pleas court on January 3, 2024, before the statute of limitations expired. Moreover, Ms. Gadway does not allege in her complaint that she lacked actual or constructive notice of the two-year filing requirement. And, as explained above, we do not find her counsel's mistaken belief about the application of R.C. 2743.16(B)'s compromise requirement was reasonable given R.C. 9.82(G)'s express exclusion of "state-supported institutions of higher education" from the type of state agencies receiving "[r]isk management and insurance programs"

provided by DAS. *See* R.C. 9.822. *See also* Ohio Dept. of Administrative Services, *Risk Management*, https://das.ohio.gov/property-services/risk-management (accessed June 2, 2025) [https://perma.cc/6APW-U3TP].

{¶ 51} To that end, if Ms. Gadway was unsure as to whether she was required to compromise her claim under R.C. 2743.16(B), she could have contacted DAS for clarification much earlier than December 22, 2023. (*See* Compl. at ¶ 10.) Waiting until two weeks before the two-year statute of limitations expired—in the midst of the busy holiday season—to contact DAS does not suggest Ms. Gadway was diligent in pursing her rights. Notably, too, Ms. Gadway has not pleaded facts in her complaint describing the efforts she or her counsel made in the 1 year, 11 months, and 18 days after her husband's death to investigate and pursue her wrongful death claim against the university before contacting DAS, so as to support any claim of diligent pursuit.

{¶ 52} On appeal, Ms. Gadway posits that because the university did not respond to her December 30, 2023 notice before January 4, 2024—the date on which the two-year statute of limitations expired—she presumed that Dr. Szymanski must not have been acting in her capacity as a university employee. (*See* Appellant's Brief at 3, 8-10.) But this argument is not compelling. First, we note that December 30th fell on a Saturday in 2023. Second, because a copy of that correspondence was not attached to her complaint, it is unclear how that notice was sent. Of course, if the notice was mailed, some delay in response would be expected. And, even if Ms. Gadway's notice was sent to the university via email, it would not be reasonable to expect an immediate response from university employees within five days—two of which are weekend dates and one being New Year's Day. Moreover, it is unclear to whom that notice was sent and whether that person was appropriately suited to receive and respond to it. As such, we do not find it reasonable for Ms. Gadway or her counsel to have presumed, as they claim, that the university's failure to respond within five days to a notice sent on a Saturday at the end of the year was an indication of anything regarding Dr. Szymanski's status as a university employee acting in that capacity when she was treating Mr. Gadway. Thus, on review, we find Ms. Gadway failed to allege facts evincing diligent pursuit of her rights in her complaint.

{¶ 53} Nevertheless, Ms. Gadway argues we should apply equitable tolling because the university would suffer no prejudice, having already received notice of the claim in her

notice of claim letter. " 'Although absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified, it is not an independent basis for invoking the doctrine.' " *Stevens*, 2013-Ohio-3014, at ¶ 21, quoting *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984). Here, despite Ms. Gadway's claim of lack of prejudice to the university, we find no basis to conclude, given the facts alleged in her complaint, that either DAS's response to her "notice of claim" letter or the university's non-response to her "notice of claim" letter created an exceptional circumstance that warrants equitable tolling.

### D. Disposition

**{¶ 54}** Based on the foregoing, we conclude the trial court did not err in finding Ms. Gadway's claims were barred by the statute of limitations and granting the university's motion to dismiss pursuant to Civ.R. 12(B)(6). Accordingly, we overrule Ms. Gadway's sole assignment of error.

## III. CONCLUSION

**{¶ 55}** Having overruled Ms. Gadway's sole assignment of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

JAMISON, P.J. and MENTEL, J., concur.